Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties in the Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The dates of the incidents giving rise to these cases are 11 October 1990 and 1 February 1991.
4. The carrier on the risk at the time of the incidents giving rise to these cases was United States Fidelity and Guaranty Company.
5. The plaintiff was paid temporary total disability benefits by the defendant-carrier pursuant to an Industrial Commission Form 21 Agreement entered into by the parties from 11 October 1990 to 11 October 1992, and from 29 March 1993 to approximately 30 August 1993. Plaintiff was paid at a compensation rate of $112.67 per week during that time period. Plaintiff was paid temporary total disability benefits from 15 December 1993 to 23 March 1994, without a Form 21 agreement and without prejudice.
6. Following her second period of temporary total disability, the plaintiff returned to work with the defendant-employer performing a light duty job until 15 December 1993, at which time her job was terminated due to restructuring at the YWCA.
7. The parties have stipulated to a set of medical records that were submitted at the time of hearing.
8. Plaintiff's Exhibit #1, a light duty job analysis of the light duty job she performed at the YWCA, was entered into evidence.
9. Plaintiff's Exhibit #2, a job description of the light duty job that the plaintiff performed at the YWCA, was entered into evidence.
10. Plaintiff's Exhibit #3, Exit Interview Form from the YWCA, was entered into evidence.
11. Defendant's Exhibit #1, a Form 18 dated 2 June 1994, was entered into evidence.
 *************
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing of this matter before the deputy commissioner, plaintiff was a fifty three year old woman. Plaintiff completed the twelfth grade and took several basic education courses at Cape Fear Community College and non-credit courses at night at the University of North Carolina at Wilmington. She completed one quarter of a certificate program for a Nurse's Assistant and some basic typing courses. Plaintiff's prior work history primarily consisted of work in a custodial capacity.
2. Plaintiff was employed at the YWCA as a custodian on October 11, 1990, when she sustained a compensable job injury to the left arm while lifting a table. She had been an employee in defendant-employer's maintenance department for ten years.
3. Plaintiff re-injured her left arm on 1 February 1991, while stacking exercise mats. The 1991 injury was also compensable.
4. Defendant-carrier, United States Fidelity Guaranty (USFG), admitted liability for benefits under the Workers' Compensation Act for plaintiff's injuries and paid compensation to her for temporary total disability under a Form 21 agreement from 11 October 1990 to 11 October 1992, and from 29 March 1993 to 30 August 1993, and without a Form 21 agreement from 15 December 1993 to 23 March 1994.
5. Plaintiff underwent two arthroscopic left-shoulder surgeries for her work-related injuries on January 27, 1992 and on March 30, 1993, and was released following the second surgery to return to work by Dr. Kevin Speer with the following restrictions: "avoid all overhead activity and not carry anything in which her hand or elbows are extended away from her body. . ., but she could work with her hands in front of her, . . . with her elbows at her side."
6. After her first arthroscopic left shoulder surgery, the plaintiff returned to a part-time, light duty receptionist job at the YWCA on October 11, 1992, working six hours a day, five days a week. This job was a new learning experience for plaintiff as she had done only custodial work for the prior ten years. The receptionist job duties required of plaintiff were modified to accommodate plaintiff's restrictions. Plaintiff was required to greet people, answer questions, answer the telephone and to do limited data entry. Defendant-employer's other receptionist positions required job duties that plaintiff was not physically capable of performing due to her injury, or clerical and other skills that plaintiff did not have.
7. The position of receptionist that was offered to plaintiff was a position that defendant-employer needed, but had not made an effort to fill until defendant-carrier contacted them to see if they had a job to offer plaintiff that would fit plaintiff's restrictions. Also, the modified position was available only temporarily, and plaintiff was not allowed to keep the position long enough to allow defendants to rebut the presumption of disability. Plaintiff worked in the position for approximately five months before leaving work due to her second surgery in March, 1993. Plaintiff returned to work on or about 30 August 1993 and the job was eliminated in December, 1993. At the time the position was eliminated, plaintiff had not yet reached maximum medical improvement.
8. Plaintiff did not have the computer and secretarial skills needed to perform the increased tasks required by the YWCA when her receptionist position was eliminated and a new position was created which required a higher level of computer and secretarial skills. Consequently, plaintiff was terminated.
9. The job duties performed by plaintiff in the light duty receptionist job did not accurately reflect the plaintiff's ability to compete with others for wages in the competitive job market as a receptionist and cannot be properly considered as evidence of plaintiff's wage-earning capacity. Defendants have not rebutted the presumption that plaintiff's disability continued after she was terminated from employment.
10. Plaintiff collected unemployment benefits for the maximum time allowed by law and engaged in active job searching for work within her restrictions after her job at the YWCA was terminated.
11. On 7 September 1994, the plaintiff was assigned a ten percent (10%) permanent partial disability rating to the left arm by Dr. Speer.
12. After 7 September 1994 plaintiff made reasonable efforts to find suitable employment but was unsuccessful. Defendants made no effort to assist plaintiff in finding suitable employment or to provide vocational rehabilitation after her job was eliminated in December, 1993. Plaintiff has been totally disabled since December 1993.
13. On 15 May 1996, when plaintiff presented to him, Dr. Speer diagnosed her condition as having deteriorated significantly. Dr. Speer recommended additional surgery. According to Dr. Speer, plaintiff's disability rating had increased and she was unemployable at any job since 15 May 1996 due to the condition of her shoulder. There is insufficient evidence from which to find that plaintiff experienced a worsening in her condition as a result of rolling over in bed on or about April 25, 1996. Even if she did, this would constitute an intervening, unintentional act.
14. Plaintiff's symptomology recurred in May, 1996. Plaintiff's shoulder problems originated with her accident in 1990, recurred after the accident in 1991 and recurred with much greater intensity in 1996. According to Dr. Speer, plaintiff's symptoms in 1996 were the same symptoms manifested in 1990 and 1993, only worse.
15. Plaintiff has proven by the greater weight of the competent, credible evidence of record that her 1996 shoulder problems were caused by and related to her compensible accidents in 1990 and 1991.
16. Plaintiff's compensation rate at all relevant times was $112.67.
 *************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has the initial burden of proving that her wage earning capacity has been impaired as a result of her compensable injury. Bridges v. Linn-Corriher Corp., 90 N.C. App. 397,368 S.E.2d 388 (1988). Plaintiff has met this burden as the defendants have accepted liability for her claims and an I.C. Form 21 Agreement was approved by the Industrial Commission.
2. Plaintiff was released to return to work with restrictions. Plaintiff's presumption of disability continues until the plaintiff returns to work at the same or increased wages. Watkins v. Central Motor Lines, Inc., 279 N.C. 132,181 S.E.2d 588 (1971). Plaintiff is cloaked in the presumption of disability and the employer has the burden of rebutting that presumption. Saums v. Raleigh Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997).
3. The light duty job as secretary that was offered to the plaintiff did not reflect plaintiff's ability to earn wages as a receptionist or in a clerical capacity in the competitive job market. Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798
(1986). There is no evidence that an employer other than defendant-employer would have hired plaintiff to do a similar job at a comparable wage. Therefore, plaintiff's presumption of disability continued through the time that the plaintiff was performing her light duty job.
4. Plaintiff's job was terminated on 15 December 1993, due to restructuring, which eliminated her position. Plaintiff made a good faith, reasonable effort to seek some type of suitable employment after her light duty job was terminated.
5. Defendant-employer has made no effort to assist the plaintiff in locating employment within her restrictions through vocational rehabilitation. Nor have they offered her suitable alternative employment.
6. According to plaintiff's treating physician, she has been incapable of performing any job since 15 May 1996, due to a worsening of her compensable injury. Her medical situation will not change without surgery. Plaintiff's presumption of disability continues after her job was eliminated through the date of this decision and continuing until she returns to work or further Order of the Commission. Saums at p. 764; and Kisiah v. W.R. KisiahPlumbing, Inc., 124 N.C. App. 72 at p. 77, 476 S.E.2d 434 (1996).
7. As a result of her compensable injuries of 11 October 1990 and 1 February 1991, plaintiff is entitled to temporary total disability compensation from 23 March 1994 and continuing thereafter until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
8. As a result of her compensable injuries on 11 October 1990 and 1 February 1991, plaintiff is entitled to payment by the defendants of all medical expenses incurred or to be incurred, including further evaluations and treatment by Dr. Kevin Speer and any other approved physicians, for so long as evaluations and treatment effect a cure, give relief or tend to lessen the plaintiff's disability. N.C. Gen. Stat. § 97-25.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to the plaintiff beginning 23 March 1994 and continuing thereafter at a rate of $112.67 per week until further order of the Industrial Commission, subject to a credit for any unemployment benefits received by plaintiff. This amount to the date of the filing of this Opinion and Award has accrued and shall be paid to plaintiff in a lump sum, subject to the attorney fee approved below.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her injuries by accident on 11 October 1990 and 1 February 1991, including further evaluations and treatment by Dr. Kevin Speer and any other approved physicians, as long as such evaluations and treatments effect a cure, give relief or lessen the plaintiff's disability, when bills for the same shall have been submitted through defendant-carrier to the Industrial Commission and approved.
3. A reasonable attorney fee of 25 percent (25%)of the compensation due plaintiff under paragraph one of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25 percent (25%) of the lump sum due plaintiff under paragraph one of this AWARD shall be deducted from that sum and be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the temporary total disability compensation due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs, including an expert witness fee of $400.00 for Dr. Reginald Hall and $250.00 for Dr. L. Scott Levin.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________________ LAURA K. MAVRETIC COMMISSIONER
CONCURRING IN THE RESULT:
S/ _____________________ RENÉE C. RIGGSBEE COMMISSIONER